IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–02439–REB–KMT

STEVEN KING,

    Plaintiff,

v.

NATIONAL CREDIT SYSTEMS, INC., and
DOES 1-10, inclusive,

    Defendants.

## ORDER

This matter is before the court on Plaintiff's "Motion to Amend Civil Scheduling Order to Provide 60-day Extension of Discovery Cutoff and Response to Plaintiff's Written Discovery" ("Mot.") [Doc. No. 26]. National Credit Systems, Inc. filed a Response [Doc. No. 30] on May 26, 2020, and Plaintiff replied on the same day [Doc. No. 31].

Plaintiff asserts that the advent of the COVID-19 pandemic caused disruption in the Plaintiff's counsel's law office such that discovery deadlines were missed and discovery sent to opposing counsel was not timely received nor responded to. For these reasons, Plaintiff seeks additional time to: 1) propound discovery to Plaintiff and receive responses, and 2) take a Rule 30(b)(6) deposition of the Defendant.

Defendant objects to any extension.  Defendant argues that Plaintiff was granted several extensions to respond to Defendant's propounded discovery prior to the mid-March COVID crisis and alleges that Plaintiff's counsel has failed to comply with this court's Local Rules.

A scheduling order was entered in this case on November 19, 2019.  [Doc. No. 24.]  The parties agreed on a discovery cut off date of May 22, 2020.  For unknown reasons, the parties agreed that the last day for either side to propound Interrogatories, Requests for Production of Documents and/or Admissions would be March 20, 2020, more than sixty days before the discovery cut-off.[1]  (*Id.* at ¶ 9(f) and (g).)  The March 20, 2020 date does not appear to be logically tied to any other dates in the Scheduling Order; nevertheless, this was the parties' agreement and was adopted by the court.

Plaintiff's counsel represents that on March 4, 2020, Mayor Eric Garcetti declared a local emergency in Los Angeles County and, as a result, "on March 10, 2020, Plaintiff's counsel's office closed due to the developing COVID-19 crisis."  (Mot. at 3, Declaration of Todd M. Friedman ("Friedman Decl.") at ¶ 3.)  As was true of most of the country, Plaintiff's attorneys and legal administrative staff transitioned to and began working from home.  On March 19, 2020, the County of Los Angeles issued its "SAFER AT HOME" Order, officially closing non-essential businesses.  (Mot. at 3.)  At nearly the same time, on March 10, 2020, Defendant served its written discovery requests on Plaintiff.  (Friedman Decl. at ¶ 4.)  Because of the business

---

[1] Since the Federal Rules of Civil Procedure generally allow thirty days for a response to requests for discovery, *see* Fed. R. Civ. P. 33, 34, and 36, the general rule is the last day to propound discovery on an opponent is thirty days prior to the discovery cutoff date.

disruption, Plaintiff's counsel sought and received several extensions of time to respond to Defendant's discovery.[2] (*Id.*)

Plaintiff's counsel admits that with the closure of his offices and the disruption of staff transitioning to work at home, he simply missed the March 20, 2020 deadline the parties had imposed upon themselves to propound discovery to one another. Instead, he propounded his discovery to Defendant on April 15, 2020, well within the time to allow Defendant a full thirty days to respond under the Rules, even though it was in violation of the deadline the parties had imposed upon each other via the Scheduling Order.

At this point, however, Plaintiff greatly compounded his relatively harmless violation of the Scheduling Order. While he was not present in his own law office to receive mail from the U.S. Post Office – and therefore knew it was highly likely that Defendant's counsel would also be unable to go to her law office – Plaintiff sent his new discovery requests to Defendant's counsel by traditional mail, not electronically. Further, Plaintiff's counsel did not inform Defendant's counsel by email that he had done so, even though the parties were effectively communicating by email on a regular basis about Plaintiff's own discovery responses.

D.C.COLO.LCivR 5.1(d) provides that "[r]egistration in CM/ECF shall constitute consent to electronic service of all pleadings or documents." Further, D.C.COLO.LCivR 5.3(c)

---

[2] It is unclear to the court whether Plaintiff has fully responded to discovery propounded upon him by Defendant in light of several references made in the Response. (See, e.g., Resp. at 5, "Defendant's Requests for Admissions are deemed admitted, and Plaintiff has waived all objections in the discovery requests served upon the Plaintiff in this matter.") However there is no request within this motion that there be any extension of time with respect to Plaintiff's obligations to respond to discovery propounded by Defendant. The deadline for those responses has, therefore, long passed. To the extent Defendant is asserting a failure to respond to discovery by Plaintiff, D.C.COLO.LCivR 7.1(d) provides, "A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."

requires that "written discovery requests and responses shall be exchanged by private e-mail or other non-paper means." Not only does surreptitious service by postal mail outside the originally imposed time limits – by a method almost guaranteed not to be expeditiously received – appear ill-mannered and imprudent in light of the pandemic regulations imposed nationwide, it actually seems calculated to ensure that Defendant's counsel would be unable to raise the issue of the Scheduling Order violation with the court in a timely manner. And, in fact, that is exactly what happened.

After much back and forth via email, Defendant's counsel was finally alerted to Plaintiff's late-sent discovery requests over one month after Plaintiff claims to have sent them by postal service. (See Mot, Ex. F, email from Katrina DeMarte dated May 18, 2020, stating that she had not received any discovery requests from Plaintiff.) Plaintiff then sent his discovery requests electronically on May 18, 2020. (Mot., n.4.)

Plaintiff now decries Defendant's lack of notice to him that service by non-electronic post was improper; however the court agrees with Defendant that all attorneys practicing in this court are expected to be familiar with, and abide by, this court's Local Rules. Further, the court finds it difficult to understand how the non-compliance could have been brought to Plaintiff's attention when Defendant was banned from her office by state orders and had no way of knowing that discovery requests had even been made, especially in light of the requests being sent months past the March 20, 2020 deadline to which the parties had agreed.

Fed. R. Civ. P. 6(b)(1)(B) provides

(b) Extending Time.
(1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:

4

> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

*Id.* The Supreme Court has addressed the meaning of "excusable neglect" in the context of the provision for late filings in the context of a bankruptcy proceeding. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993). The Tenth Circuit later adopted the same reasoning and interpretation in *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1045–46 (10th Cir. 1994), when interpreting "excusable neglect" in the context of failure to file a timely notice of appeal. Since then, *Pioneer* has become the standard in this Circuit in most contexts where neglect has been shown with respect to a deadline.

The Supreme Court pointed out that "absent sufficient indication to the contrary, . . . Congress intends the words in its enactments to carry their ordinary, contemporary common meaning." *Pioneer*, 507 U.S. at 388 (internal quotations omitted). It pointed out further that the common meaning of "neglect" is " 'to give little attention or respect' to a matter, or . . . 'to leave undone or unattended to esp[ecially] through carelessness.' " *Id.* (emphasis omitted) (quoting Webster's Ninth New Collegiate Dictionary 791 (1983)). The Court concluded that in using the term excusable neglect, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* *See also Romero v. Peterson*, 930 F.2d 1502, 1505 (10th Cir. 1991) (holding that the presence of "excusable neglect" under Rule 4(a)(5) "should be determined on the basis of the common sense meaning of the two simple words") (internal quotations omitted).

In *Pioneer*, the Court directed lower courts grappling with whether neglect is excusable to "tak[e] account of all relevant circumstances surrounding the party's omission" and

specifically pointed to four factors to be weighed in the process: "the danger of prejudice to [the nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395; *see also In re Centric Corp.*, 901 F.2d 1514, 1517 (10th Cir. 1990). The Tenth Circuit has held that the third factor—"fault in the delay"—is "perhaps the most important single factor . . . in determining whether neglect is excusable." *Chanute*, 31 F.3d 1046 (citing *United States v. Andrews*, 790 F.2d 803, 806 (10th Cir. 1986)). *See Shifers v. Arapahoe Motors, Inc.*, No. 17-CV-01753-CMA-KLM, 2018 WL 6620866, at *3 (D. Colo. Dec. 18, 2018).

> The Tenth Circuit has held
>
> This is not to say that the test for excusable neglect is not a strict one. It is merely to say that, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."

*Chanute*, 31 F.3d at 1046 (quoting *Pioneer*, 507 U.S. at 391).

Up until April 15, 2020, this court would have found excusable neglect by Plaintiff's missing the March 20, 2020 deadline to serve its discovery on Defendant in light of the chaos sweeping the entire country. Since service of discovery requests on that date would have still complied with the federal rules, was not prejudicial to Defendant, and would cause no judicial delay, the court likely would have waived the March 20, 2020 date and allowed discovery to proceed. But that is not what happened.

Instead the Plaintiff, in what appears to have been a deliberate act, violated the court's Local Rules and attempted to significantly disadvantage his opponent by serving discovery he

should reasonably have known would not be received nor would it be objected to. This has caused undue prejudice to the Defendant and will, without doubt, result in delay of judicial proceedings. The deadline for the completion has already passed and trial is set. Therefore, the court finds that the delay past April 15, 2020 is NOT excusable.

It is therefore **ORDERED**

Plaintiff's "Motion to Amend Civil Scheduling Order to Provide 60-day Extension of Discovery Cutoff and Response to Plaintiff's Written Discovery" [Doc. No. 26] is **DENIED**.

Dated May 29, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge